783 N.W.2d 416 (2010)
279 Neb. 964
STATE of Nebraska, appellee,
v.
THOI VO, appellant.
No. S-09-912.
Supreme Court of Nebraska.
June 4, 2010.
*418 Thoi Vo, pro se.
Jon Bruning, Attorney General, and Nathan A. Liss for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
*419 STEPHAN, J.
Thoi Vo appeals from the denial of his motion for postconviction relief without an evidentiary hearing. We affirm.

I. BACKGROUND
In April 2007, Vo was charged by information with first degree murder and use of a weapon to commit a felony. Represented by counsel and assisted by an interpreter, he entered a not guilty plea. On December 11, the State amended the information to one count of second degree murder, and Vo, again with counsel and the assistance of an interpreter, entered a plea of no contest. Before accepting the plea, the district court found that Vo was not under the influence of alcohol, drugs, narcotics, or other pills. In the course of this determination, Vo informed the court that he had some "mental problems" for which he had last seen a doctor in 2001. Vo stated that he did not take any medication for mental problems. Vo informed the court that he knew that he was appearing before a court in Lincoln for the purpose of entering a plea. The court specifically found that Vo was following the questions, was giving suitable answers, and appeared physically normal.
The court also informed Vo of the rights and privileges he would be waiving by entering the plea. The court specifically asked whether Vo was freely and voluntarily giving up his rights and stated, "In other words, is this what you want to do?" Vo responded, "Yes." The court also asked, "[O]ther than [the] plea agreement, which may be a promisethe State may have promised you that they would amend this from a first-degree murder to a second-degree murder. Other than that promise, have any other promises been made to you at all? ... And I mean by anybody." Vo responded, "No." In response to the court's inquiry, Vo's counsel stated that he believed that Vo was waiving his rights freely, voluntarily, knowingly, and intelligently.
The court also asked Vo whether he had told his counsel everything he knew about the case, and Vo responded that he had and that he was satisfied with the efforts of his counsel on his behalf. Regarding the plea agreement, the court told Vo:
I want you to understand that I'm not bound by plea negotiations. And if I accept your plea of no contest, I don't have to accept any recommendation being made by the County Attorney, [your counsel,] or anyone else as to what the sentence ought to be. Do you understand that?
Vo responded that he did. The court also told Vo that it could take into consideration "all of the circumstances surrounding the charges" in determining the sentence to be imposed. In addition, the court asked Vo, "Has anyone made any promises to you or represented to you in any way what the sentence will be in this case if I accept your plea and find you guilty?" Vo responded, "No."
The State then offered a factual basis for the plea. Summarized, the basis was that Vo and the victim were involved in a minor vehicular accident in Lancaster County. Vo and his passenger argued with the victim, and the confrontation escalated into a fistfight. At one point, onlookers pulled Vo out of the fight, and he then returned to his vehicle, retrieved a knife, and stabbed the victim in the abdomen. Vo then used the same knife to puncture the tires on the victim's car, and then left the area with his passenger. At least three eyewitnesses saw the crime, and Vo admitted to police that he stabbed the victim. While incarcerated, Vo admitted to several cellmates that he had stabbed the victim.
*420 At the sentencing hearing, Vo's counsel referred to a psychological evaluation performed on Vo at the Lincoln Regional Center in 2000, noting that it had resulted in a diagnosis of "pervasive developmental disorder." Prior to pronouncing the sentence, the court stated that it was aware of this diagnosis and of other reports of Vo's mental health that were included in the presentence report. The court sentenced Vo to 50 years to life in prison.
After his direct appeal was summarily affirmed, Vo filed a pro se verified motion for postconviction relief, in which he alleged that his trial counsel was ineffective (1) in dealing with his mental competency in the trial court and on appeal and (2) in advising him and his family that he would receive a sentence of imprisonment of 20 to 40 years in exchange for his no contest plea. Vo also alleged that the State committed "prosecutorial misconduct" by "hiding the true nature of [Vo's] mental health and physical deformities." The State filed a responsive motion requesting the court to deny the postconviction motion without an evidentiary hearing based upon the files and records of the case. After conducting a hearing on this motion, the district court determined that the files and records of the case established that Vo was not entitled to the postconviction relief he sought and therefore overruled his motion without conducting an evidentiary hearing. Vo perfected this timely appeal.

II. ASSIGNMENTS OF ERROR
Vo's assignments of error include certain general propositions which are not directed to a specific ruling by the district court and therefore are not considered on appeal. Vo properly assigns, restated and consolidated, that the district court erred in denying his motion for postconviction relief without an evidentiary hearing on the issues of (1) whether the State committed prosecutorial misconduct and (2) whether his trial counsel, who also represented him on direct appeal, was ineffective. We also understand Vo to contend that the district court erred in not appointing counsel to represent him in this postconviction proceeding.

III. STANDARD OF REVIEW
A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous.[1] An evidentiary hearing on a motion for postconviction relief must be granted when the motion contains factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution.[2] However, if the motion alleges only conclusions of fact or law, or the records and files in the case affirmatively show that the movant is entitled to no relief, no evidentiary hearing is required.[3]

IV. ANALYSIS

1. PROSECUTORIAL MISCONDUCT
Vo was convicted and sentenced based upon his plea of no contest to the charge of second degree murder. A plea of no contest is equivalent to a plea of guilty.[4] Normally, a voluntary guilty plea *421 waives all defenses to a criminal charge.[5] Vo's plea waived any claim of prosecutorial misconduct. Moreover, any such claim would be procedurally barred under the principle that a motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and which were or could have been litigated on direct appeal.[6] Accordingly, there is no merit in Vo's argument that the district court erred in dismissing his postconviction claim based upon prosecutorial misconduct.

2. INEFFECTIVE ASSISTANCE OF COUNSEL
In a postconviction action brought by a defendant convicted because of a guilty plea or a plea of no contest, a court will consider an allegation that the plea was the result of ineffective assistance of counsel.[7] In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with Strickland v. Washington,[8] to show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense in his or her case.[9] The two prongs of this test, deficient performance and prejudice, may be addressed in either order.[10] Because Vo's conviction was the result of a plea, the prejudice requirement is satisfied if he can show a reasonable probability that, but for the errors of counsel, he would have insisted on going to trial rather than pleading.[11]
Vo assigns and briefly argues that his counsel was ineffective in "failing to establish that the victim initiated the fighting," but that issue was not raised in Vo's motion for postconviction relief and therefore is not properly before us on appeal. We therefore address only the claims that Vo's counsel was ineffective in not raising competency issues and in promising Vo that he would receive a specific sentence if he entered a plea of no contest.

(a) Competency
Based upon the assertion that he is a person with mental retardation, Vo argues that his counsel was ineffective in failing to seek a competency hearing in the district court and in failing to raise a competency issue on appeal. A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense.[12] The test of mental capacity to plead is the same as that required to stand trial.[13] A court is not required to make a competency determination in every case in which a defendant seeks to plead guilty or to waive his or her right to counsel; a competency determination is necessary only when a court has reason to doubt the *422 defendant's competence.[14]
Vo's allegation that he was incompetent to plead because he is a person with mental retardation is flawed in two respects. First, the files and records do not support and indeed refute Vo's claim that he is a person with mental retardation. Vo contends that the diagnosis was made during a psychological evaluation conducted by the Adolescent and Family Services team at the Lincoln Regional Center in 2000, when Vo was 17 years old and subject to the jurisdiction of a juvenile court. A report of the evaluation is included in the record. The report reflects that Vo "appears to have the characteristics of a pervasive developmental disorder" characterized by "severe and pervasive impairment in reciprocal social interaction skills and in communication skills." The report further indicates that the development disorder "is often associated with some degree of mental retardation" and that while an IQ test was not administered, Vo's performances on other tests "suggest either borderline or retarded mental functioning." In a letter dated January 21, 2008, which was included in the presentence report, the supervising psychologist for the 2000 evaluation stated:
A pervasive developmental disorder is not the same as an intellectual disorder, as in mental retardation. At the time of the [Adolescent and Family Services] evaluation there was concern with [Vo's] intellectual deficit, but his language and cross-cultural problems made an intellectual test invalid although there was enough evidence to raise the possibility of intellectual problems a[t] that time. However, additional school nonverbal testing reports suggest impaired intelligence is not a primary problemon some nonverbal tests he scored within the normal range.
The record also reflects that after the 2000 evaluation, Vo was referred to another facility for further evaluation. A psychological report dated March 24, 2001, was completed by a licensed supervising psychologist, a licensed mental health practitioner, and a licensed professional counselor at this facility. That report indicates that after testing, the examiners were "unable to substantiate any of the necessary deficits that would indicate any type of pervasive developmental disorder or to even bring cause for a rule out diagnosis. [Vo's] over-all functioning surpasses what would indicate symptoms for pervasive developmental disorder." The examiners diagnosed Vo with a general anxiety disorder and opined that "the prior diagnosis of Pervasive Developmental Disorder does not accurately describe ... Vo at this time." The presentence report includes Vo's school records, which reflect that he graduated from high school in 2003 and achieved grades which, while not exemplary, sometimes included A's, B's, and C's in math and reading classes. After high school, Vo attended community college and worked for an electrical company performing wiring.
Second, even if a diagnosis of mental retardation were established, it would not necessarily imply incompetence to plead or stand trial.[15]State v. Bradford[16] was a postconviction proceeding in which the defendant contended that he was not competent to enter a guilty plea because he was a person with mental retardation. The *423 record reflected that the defendant had been diagnosed with moderate mental retardation, as well as alcohol abuse, mild organic brain syndrome, and a personality encompassing the schizotypal and antisocial personality classifications. Despite this, we concluded that other evidence in the record and the defendant's responses to the court's questioning at the plea hearing were sufficient to establish the defendant's competency at the time of the plea.
As noted, the record establishes that Vo does not have a cognitive mental impairment. In addition, the record of his plea hearing refutes his current claim that he was incompetent to enter his no contest plea. Vo's responses to questions from the court were appropriate and reflected his knowledge that he was appearing in court for the purpose of entering a no contest plea and that he understood the consequences of such action as they were explained to him by the judge. Because the record affirmatively reflects that Vo was competent to enter his plea, his counsel could not have been ineffective in not raising an issue of competency, either in the trial court or on appeal. Defense counsel is not ineffective for failing to raise an argument that has no merit.[17]

(b) Promise of Specific Sentence
Vo also contends that his counsel was ineffective in promising him and his family that if he entered a no contest plea, he would receive a sentence of either 20 to 30 or 20 to 40 years' imprisonment. Vo contends that but for that promise, he would not have entered his plea.
The record of the plea hearing refutes this claim. In response to direct and specific questioning by the judge, Vo affirmed that no one had made any promises, aside from the plea agreement, in exchange for his plea. Vo also affirmed that entering a plea was what he wanted to do, and then again agreed that other than the plea agreement, no "other promises [had] been made to [him] at all ... by anybody." After the plea agreement was stated to the court, the judge informed Vo:
I want you to understand that I'm not bound by plea negotiations. And if I accept your plea of no contest, I don't have to accept any recommendation being made by the County Attorney, by [your counsel] or anyone else as to what the sentence ought to be. Do you understand that?
Vo responded that he did. The judge then specifically asked Vo whether anyone had made any promises to him or represented to him what his sentence would be, and he said, "No." Having unequivocally represented to the court on the record that no promises were made by anyone regarding his sentence, Vo is not entitled to an evidentiary hearing on his postconviction claim to the contrary.

3. APPOINTMENT OF COUNSEL
Vo argues that a court should be required to appoint postconviction counsel for any person with mental retardation. As we have noted, the record refutes Vo's claim that he is a person with mental retardation. Under the Nebraska Postconviction Act, it is within the discretion of the trial court as to whether counsel shall be appointed to represent the defendant.[18] When the assigned errors in a postconviction petition before the district court contain no justiciable issues of law or fact, it is not an abuse of discretion to fail to appoint *424 counsel for an indigent defendant.[19] Because Vo's postconviction motion presents no justiciable issues, the district court properly refused to appoint postconviction counsel.

4. PLAIN ERROR
In his pro se brief, Vo specifically requests that we review the judgment of the district court for plain error. We find none.

V. CONCLUSION
For the reasons discussed, we affirm the judgment of the district court dismissing Vo's motion for postconviction relief without an evidentiary hearing.
AFFIRMED.
NOTES
[1] State v. Molina, 279 Neb. 405, 778 N.W.2d 713 (2010); State v. Nesbitt, 279 Neb. 355, 777 N.W.2d 821 (2010).
[2] State v. Davlin, 277 Neb. 972, 766 N.W.2d 370 (2009); State v. Jim, 275 Neb. 481, 747 N.W.2d 410 (2008).
[3] Id.
[4] State v. Amaya, 276 Neb. 818, 758 N.W.2d 22 (2008); State v. Lassek, 272 Neb. 523, 723 N.W.2d 320 (2006).
[5] State v. Watkins, 277 Neb. 428, 762 N.W.2d 589 (2009); State v. McLeod, 274 Neb. 566, 741 N.W.2d 664 (2007).
[6] State v. Moore, 272 Neb. 71, 718 N.W.2d 537 (2006); State v. Harris, 267 Neb. 771, 677 N.W.2d 147 (2004).
[7] State v. Watkins, supra note 5; State v. McLeod, supra note 5.
[8] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[9] State v. McKinney, 279 Neb. 297, 777 N.W.2d 555 (2010).
[10] Id.
[11] See State v. Glover, 278 Neb. 795, 774 N.W.2d 248 (2009).
[12] State v. Lassek, supra note 4.
[13] Id.
[14] State v. Hessler, 274 Neb. 478, 741 N.W.2d 406 (2007). See, also, Godinez v. Moran, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993).
[15] See, State v. Tully, 226 Neb. 651, 413 N.W.2d 910 (1987); State v. Bradford, 223 Neb. 908, 395 N.W.2d 495 (1986).
[16] State v. Bradford, supra note 15.
[17] State v. McLeod, supra note 5.
[18] Id.; State v. Silvers, 255 Neb. 702, 587 N.W.2d 325 (1998).
[19] State v. McLeod, supra note 5.