IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. CAREY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

PATRICK S. CAREY, APPELLANT.

Filed July 5, 2016.    No. A-16-173.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and Nathan J. Sohriakoff for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

INBODY, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

Patrick S. Carey pleaded no contest to a charge of attempted criminal impersonation, first offense, a Class I misdemeanor, pursuant to Neb. Rev. Stat. §§ 28-201(4)(e) and 28-638(1)(c) and (2)(e) (Cum. Supp. 2014). The district court for Lancaster County sentenced Carey to 365 days' imprisonment, and he appeals. For the following reasons, we affirm.

BACKGROUND

On June 26, 2015, Carey was charged in the county court for Lancaster County with one count of possession of methamphetamine, a Class IV felony, pursuant to Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2014). After waiving his right to a preliminary hearing, Carey was bound over to the district court. For a majority of the time that the present case was pending, Carey was in the custody of the Nebraska Department of Correctional Services (DCS) in connection with an

- 1 -

unrelated case. On December 10, 2015, two days after being released from DCS on the unrelated case, the district court in the present case released Carey on bond.

At a hearing on December 14, 2015, Carey's counsel informed the court that Carey had reached a plea agreement with the State, pursuant to which Carey would plead no contest to an amended charge of attempted criminal impersonation. The court granted the State leave to file the amended information, and Carey pleaded no contest. While inquiring into the voluntariness of the plea, the court asked Carey whether anyone had "held out any promises of any kind to get you to come in here today and enter your plea," and he responded, "No." The court also asked whether anyone had made any promises to him as to what his sentence would be if he pleaded no contest, and he responded, "No." The court then asked if he understood that the determination of the appropriate sentence was entirely up to the court, and he responded, "Yes." Following these questions, Carey affirmed that he wished to plead no contest to the amended charge.

During the plea hearing, the State offered a factual basis for the plea: On June 26, 2015, a Lancaster County deputy sheriff conducted a random license plate check of a vehicle in downtown Lincoln, Nebraska. There was "a broadcast for the vehicle" issued by the Lincoln police department. The deputy conducted a traffic stop, and the driver identified himself as Cecil Carey. It was later determined that the driver was Patrick Carey, who admitted he had lied about his identity. The deputy also determined that Carey had an outstanding warrant for his arrest.

At the conclusion of the plea hearing, the court found that the factual basis was sufficient and accepted Carey's plea of no contest, finding that it was entered freely, voluntarily, knowingly, and intelligently. The court then entered a conviction of attempted criminal impersonation.

At a sentencing hearing on January 28, 2016, Carey's counsel moved to withdraw Carey's plea. Counsel explained that, upon receiving the presentence investigation report (PSR), which indicated that Carey was entitled to two days' credit for time served, Carey informed counsel that he had pleaded no contest because he believed he would receive credit for all of the time he served in DCS while the case was pending. Carey supposedly recalled a conversation with defense counsel during which counsel informed him that he would receive such credit.

In response to these statements, the prosecutor informed the court that he recalled a conversation with a different defense counsel, not the defense counsel present at the sentencing hearing, during which the issue of sentencing credit was discussed. According to the prosecutor, neither he nor defense counsel knew whether Carey would receive credit for the time he spent in DCS. The prosecutor did not recall any promises being made that Carey would receive credit for the time served.

The court denied the motion to withdraw the plea. The court explained that it had asked Carey at the plea hearing whether anyone had made any promises or representations regarding what sentence may be imposed, and Carey had responded "No."

When given an opportunity for allocution at the sentencing hearing, Carey again addressed the issue of sentencing credit. He told the court, "I guess I was fully aware when you said promises, that that was what was told to me, that I'd get time credit." He said that he had not wanted to enter the plea, but did so "due to the fact that [he'd] get time credit." He further stated that he was enrolled in "Voc Rehab" and was supposed to start "psych and regular substance abuse treatment." He said that starting substance abuse treatment was "a real big deal" for him.

At the conclusion of the sentencing hearing, the court stated that it found it incredulous that Carey believed he would "get double credit" for the time he spent in DCS. At that point, Carey began to interrupt, and the court responded:

> Stop. I'm talking now and you are not to speak. Your history is so long and so horrendous, that you probably know more about this than I do, and I had history before I took this bench as well. So I've had experience in the court system, and I've had experience with defendants, and I have never seen a situation where anybody got double credit for any time they sat anywhere. I know that, and I know you know that. So it is disingenuous for you to make that statement now.

The court then found that, considering the nature and circumstances of the crime, as well as Carey's history and character, imprisonment was necessary for the protection of the public, because the risk was substantial that, during any period of probation, Carey would engage in additional criminal conduct. The court further found that any lesser sentence would depreciate the seriousness of the crime and promote disrespect for the law. The court sentenced Carey to 365 days' imprisonment, with credit for 2 days' time served. Carey timely appealed.

## ASSIGNMENTS OF ERROR

Carey assigns, restated, that (1) his sentence is excessive, and (2) he received ineffective assistance of counsel.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013).

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. Sidzyik*, 281 Neb. 305, 795 N.W.2d 281 (2011). In order to establish a right to relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense in his or her case. *Sidzyik, supra*. The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*.

## ANALYSIS

*Excessive Sentence*.

Carey's first assignment of error is that his sentence is excessive. He contends that the court gave "a disproportionate amount of weight" to his criminal history, without adequately considering the circumstances of the offense, his "past and current success in employment," and his willingness to enter a plea of no contest. Brief for appellant at 11-12. Carey also argues that the court allowed

its "personal feelings" to influence the sentencing decision. *Id*. at 13. In support, he refers to the court's supposed "outburst" during which Carey was told that it was disingenuous for him to believe he would receive credit for time he spent in DCS on an unrelated charge. *Id*. at 14.

As noted above, an appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Ortega, supra*. Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011). "The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life." *Id*. at 196, 802 N.W.2d at 433.

At the time of Carey's offense, attempted criminal impersonation, by knowingly providing false personal identifying information to a law enforcement officer, was a Class I misdemeanor. See §§ 28-201(4)(e) and 28-638(1)(c), (2)(e). The applicable sentencing range was not more than one year imprisonment, or up to a $1,000 fine, or both. Neb. Rev. Stat. § 28-106(1) (Cum. Supp. 2014). Carey's sentence of 365 days' imprisonment was within the statutory limits and, therefore, will be affirmed if it was not an abuse of discretion.

The PSR revealed that Carey was 29 years old at the time of the offense. Because Carey failed to schedule a presentence investigation interview, the PSR contained little information about his living situation at the time of the offense; however, it did list his criminal history. In addition, attached to the PSR was a PSR from an unrelated case completed in June 2013, which provided information about Carey's background. In particular, it indicated that Carey had not completed high school and had a history of alcohol and drug abuse, particularly methamphetamine abuse.

The PSR also included police reports and other information about the circumstances of the present offense. During the traffic stop, the deputy sheriff smelled an odor of marijuana coming from the vehicle. The deputy searched the vehicle and located a black digital scale in the glove box. The scale had white residue on it that tested positive for methamphetamine. After being advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), Carey admitted that the scale was his and that the white substance was methamphetamine.

Carey's criminal history documented in the PSR is extensive. As a juvenile, Carey was adjudicated four times for various offenses. As an adult, Carey had a total of 48 prior convictions, and he had been sentenced to jail for 19 of those convictions. His convictions included trespassing, assault, attempted robbery, second degree forgery, unauthorized use of a financial transaction device, theft by unlawful taking, theft by receiving stolen property, third degree sexual assault, procuring alcohol for a minor, attempted escape, violation of the Sex Offender Registration Act, making a false statement to a police officer, possession of marijuana, and third degree domestic assault.

Although Carey contends that the court gave "a disproportionate amount of weight" to his criminal history, brief for appellant at 11, we cannot agree. The court stated at the sentencing hearing that it had considered the nature and circumstances of the crime, as well as Carey's history

and character. Given Carey's lengthy criminal history, the court's comment that his criminal history was "horrendous" was not unjustified, and it does not show that the court gave this factor too much weight in determining an appropriate sentence. Having reviewed the record and considered the relevant factors, we find that Carey's sentence is not excessive.

In affirming Carey's sentence, we also note that there is little in the record to support his assertion that the court failed to consider his "past and current success in employment." Brief for appellant at 11-12. As stated, Carey failed to schedule a presentence investigation interview, so the PSR contains no information about his employment at the time of the offense. However, at the sentencing hearing, Carey informed the court that he was working "on and off" for a construction company. In addition, the prior PSR from June 2013 attached to the PSR in the present case showed that Carey had a history of employment as a laborer for construction companies. This employment history does not render the court's sentencing decision an abuse of discretion.

We also disagree with Carey that the court allowed its "personal feelings" to influence its sentencing decision. Brief for appellant at 13. The court's comments that Carey describes as an "outburst," *id.* at 14, were made after Carey interrupted the court as it began explaining its sentencing decision. During the supposed "outburst," the court explained that it did not find credible Carey's assertion that he believed he would receive sentencing credit for the time he spent in DCS on an unrelated charge. Nothing about the court's comments suggests that "personal feelings" improperly invaded the sentencing decision.

*Ineffective Assistance of Counsel.*

Carey's second assignment of error is that he received ineffective assistance of counsel. First, he contends that counsel was ineffective because he "pressured [Carey] into entering a plea by enticing him with the likelihood that he would receive enough credit for time served to cover any sentence imposed by the district court." Brief for appellant at 16. Second, he contends that counsel was ineffective because he failed to make any arguments on Carey's behalf at the sentencing hearing.

In order to prevail on a claim of ineffective assistance of counsel at trial, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Dunster*, 278 Neb. 268, 769 N.W.2d 401 (2009). The defendant also must show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* This requires the defendant to demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* The two prongs, deficient performance and prejudice, may be addressed in either order. *Id.*

In most instances, claims of ineffective assistance of trial counsel cannot be reached on direct appeal, because the record does not contain facts necessary to decide either prong of the analysis under *Strickland v. Washington, supra. State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010). Generally, we can reach ineffective assistance of counsel claims on direct appeal only in those instances where it is clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that

no tactic or strategy can overcome the effect of the error. *Id.* An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

The State argues that the record is insufficient for us to decide either of Carey's claims of ineffective assistance of counsel. However, we do not agree. As we explain, the record is sufficient to resolve both claims.

First, the record establishes that Carey cannot prevail on his claim that counsel was ineffective because he pressured Carey into entering a plea of no contest. Carey asserts that counsel enticed him into entering the plea "with the likelihood that he would receive enough credit for time served to cover any sentence imposed by the district court." Brief for appellant at 16. However, during the plea hearing, the court asked Carey whether anyone had "held out any promises of any kind to get you to come in here today and enter your plea," and he responded, "No." The court also asked whether anyone had made any promises to him as to what his sentence would be if he pleaded no contest, and he responded, "No." The court then asked if he understood that the determination of the appropriate sentence was entirely up to the court, and he responded, "Yes." Following these questions, Carey affirmed that he still wished to plead no contest to the amended charge.

The Nebraska Supreme Court has held in the context of a postconviction petition that, when a defendant has unequivocally represented to the court at a plea hearing that no promises were made by anyone regarding the sentence to be imposed, the defendant is not entitled to an evidentiary hearing on his postconviction claim of ineffective assistance of counsel to the contrary. *State v. Dragon*, 287 Neb. 518, 843 N.W.2d 618 (2014). For example, in *State v. Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010), the defendant alleged in his postconviction petition that his trial counsel was ineffective in promising him that if he entered a no contest plea, he would receive a sentence of 20 to 30 or 20 to 40 years' imprisonment. The court held that "[t]he record of the plea hearing refutes this claim." *Id.* at 372, 783 N.W.2d at 423. The court explained that, during the plea hearing, Vo had answered "No" when asked whether anyone had made him any promises in exchange for his plea. *Id.* Similarly, he had answered affirmatively when asked if he understood that the court was not bound to accept any recommendation as to what the sentence ought to be. *Id.* The court concluded: "Having unequivocally represented to the court on the record that no promises were made by anyone regarding his sentence, Vo is not entitled to an evidentiary hearing on his postconviction claim to the contrary." *Id.* at 373, 783 N.W.2d at 423.

Although *State v. Vo, supra*, involved a postconviction claim of ineffective assistance of counsel, its reasoning is no less applicable here. The record of the plea hearing in our case is nearly identical to the record of the plea hearing in *Vo*. Therefore, the record is sufficient for us to deny Carey's first claim of ineffective assistance of counsel.

The record also establishes that Carey cannot prevail on his claim that counsel was ineffective by failing to make any arguments on Carey's behalf at the sentencing hearing. In support of this claim, Carey argues that if counsel had addressed the court, counsel "could have clarified the importance and meaning of [Carey's] progress since his previous [PSR]." Brief for appellant at 17. Carey points out that, although he himself told the court about his "treatment and

job plans," the court "clearly did not find the new information persuasive." *Id*. Carey suggests that counsel could have made a more persuasive argument regarding his progress following the previous PSR.

Carey cannot establish prejudice based on his counsel's failure to offer argument relating to mitigating factors at the sentencing hearing. The court heard from Carey at the sentencing hearing that he had taken steps to begin substance abuse treatment and that he was employed. Even in light of this information, the sentence imposed was not excessive, as we have concluded. The result of the proceeding would not have been different had counsel offered additional argument regarding Carey's substance abuse treatment, employment, or other progress following his previous PSR. Considering the circumstances of the offense, Carey's lengthy criminal history, and his history of substance abuse, argument from counsel reiterating the same information that Carey himself provided, albeit in a "more persuasive" manner, would not have resulted in a lesser sentence. Because he cannot show prejudice, Carey's claim of ineffective assistance of counsel fails.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court for Lancaster County.

AFFIRMED.