IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. BROWN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JESUS D. BROWN, APPELLANT.

Filed July 17, 2018.    No. A-17-278.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, Webb E. Bancroft, and Katherine E. Lesiak, Senior Certified Law Student, for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

Following a jury trial in the district court for Lancaster County, Jesus D. Brown was convicted of first degree sexual assault. Brown was sentenced to not less than 16 years nor more than 20 years in prison. On appeal, Brown asserts he was denied a fair trial, he asserts his trial counsel was ineffective, he challenges the sufficiency of the evidence, and he asserts the sentence imposed was excessive. For the reasons that follow, we affirm.

## II. PROCEDURAL BACKGROUND

On December 4, 2015, Brown was charged by information with first degree sexual assault, a Class II felony, in violation of Neb. Rev. Stat. § 28-319(1)(a) and (b) (Reissue 2016). The charges arose out of an incident which occurred in the early morning hours of September 27, The offense

was alleged to be an aggravated offense as it involved the sexual penetration of a woman, C.S., when he knew or should have known that she was mentally or physically incapable of resisting or appraising the nature of his conduct or which involved the penetration of C.S., a person 13 years of age or older, without her consent. See Neb. Rev. Stat. § 29-4001.01(1)(a) and (c) (Supp. 2015).

A jury trial was held January 3 through 9, 2017. At the close of the State's evidence, Brown moved to dismiss the information, and the motion was overruled. He renewed his motion to dismiss at the close of evidence, asserting the State had not presented a prima facie case of first degree sexual assault. His motion was overruled.

The jury found Brown guilty of the charged crime and the court accepted the jury's verdict. Brown filed a motion for new trial on March 8, 2017. The State objected to the motion as it was not timely filed, in accordance with § 29-2103 (Reissue 2016). After a hearing, the court overruled Brown's motion for new trial.

Brown was sentenced to not less than 16 years nor more than 20 years in prison, and the sentence was ordered to run consecutive to any other sentence he was serving at that time. Brown timely appealed.

### III. FACTUAL BACKGROUND

C.S. is employed as a dispatcher/jailer for a county sheriff's office in Nebraska. On September 26, 2015, she drove approximately 3 hours from her home to visit her sister, F.F., in Lincoln. C.S., F.F., and a few friends went to several bars in downtown Lincoln and C.S. had multiple alcoholic beverages. She was refused entry at the last bar they visited, because she was determined to be too intoxicated. She had trouble walking, standing, and dropped her identification when she tried to give it to the bouncer. She waited outside of the bar for her sister to come out. Earlier in the evening, F.F. had mistakenly left her keys in a friend's car, so F.F. and C.S. did not have access to F.F.'s car or her home. Another friend, Katrina, agreed to give them a ride.

Katrina gave C.S. and F.F. a ride to Cornell Culver Sr.'s house, and they arrived around 2 a.m. C.S. did not know anyone in the house, except for F.F., but she was introduced to Cornell and Brown. Cornell's son and some friends were also in the home. C.S., F.F., Cornell, and Brown sat at the dining room table and talked. C.S. drank two beers and smoked cigarettes.

C.S. talked to Brown, and she noticed that he had an ankle monitor. She knew that an ankle monitor indicated that he was on parole, and she began talking with him about the difference between prison and the jail where she worked. They also talked about tattoos, as Brown had several visible tattoos. They did not hold hands or hug, they did not kiss, they did not make plans to get together at a later date, they did not discuss "hooking up," they did not discuss their sex lives, and she did not give any indication that she was interested in him romantically. C.S. testified that Brown did not make her feel uncomfortable and he did not say anything inappropriate.

At some point between 2 and 5 a.m. Brown asked for a ride from someone to charge his ankle monitor, and he left. C.S. testified that she asked someone to buy her a double cheeseburger and a pack of cigarettes. She recalled receiving the items and her change, and eating the cheeseburger. At around 5 a.m., she told her sister that she was tired and Cornell gave permission for her to sleep in his room. She laid down on the bed with F.F. and fell asleep. F.F. testified that

once C.S. was asleep, she went back downstairs and then went outside to sit with Cornell in his truck.

C.S. woke up to "intense pressure" and biting on her neck, and it was painful. She realized that a man's penis was inside of her, but it was dark in the room and she did not know who was on top of her. She pretended to be asleep because she was afraid, she did not know where her sister was, and she did not know anyone else in the home. After approximately 5 minutes the man ejaculated and then laid down on top of her. She testified that when she fell asleep she was fully clothed. When she woke up she was not wearing her jeans or underwear, and she had not removed the clothing items herself. She was still wearing a bra, a "spaghetti strap," a tank top, and a long-sleeved shirt.

She tilted her body to roll the man off of her and then picked up her phone and texted her sister. F.F. did not respond. C.S. put on her glasses, pants, and shoes. She found her underwear on the floor and put it in her purse. As she left the room there was enough light to see a half-naked man with no pants on. She did not stop to see who the man was.

F.F. testified that approximately 20 to 30 minutes after she left Cornell's bedroom she received a phone call from C.S. F.F. told C.S. that she was outside and when C.S. came to find her, she was crying and hugged F.F. hard. She told F.F. that she woke up with a man on top of her. F.F. asked if they should call 911 and Cornell told her not to. He said he would "handle it." Cornell testified that he heard C.S. say, "He raped me." When he went upstairs, he found Brown asleep on his bed and Brown's pants were not covering his buttocks. Cornell told Brown to leave because C.S. had alleged that Brown had raped her and the police had been called. Cornell testified that Brown seemed confused, then he "took off."

F.F. called 911 and a recording of the call was entered into evidence as an exhibit. While C.S. talked to dispatch, F.F. went upstairs to find her wallet and saw Cornell standing over by the mattress and Brown laying on the bed with his pants down. F.F. saw Brown leave the house.

C.S. gave a statement to the responding officer, investigator Michael Ripley, at Cornell's house. She was crying and upset when she spoke to the police officers and reported that she woke up to pain and pressure on her head and neck and she realized once she was fully awake that someone was having sex with her. She reported that she was too scared to move or fight back and she waited for the man to stop. She gave a statement at the police station. Then C.S. was transported to the hospital for a forensic examination of her body to collect biological and trace evidence, and to note injuries throughout her body.

Sue Gabriel is a registered nurse and sexual assault nurse examiner (SANE). She explained the procedure for SANE examinations, which take approximately 3 to 4 hours to complete. She conducted the sexual assault examination of C.S. beginning at 9:25 a.m. on September 27, 2015.

Gabriel observed two areas of bruising on the right side of C.S.' neck, and indications that the areas had been bitten. She found redness along the right side of the labia and the inner side of the labia, and two tears. The police had collected C.S.' underwear and Gabriel collected the rest of C.S.' clothing. She took fingernail scrapings and photos, performed pubic hair combings, took a blood sample for DNA comparison, and took oral, cervical, vaginal, and rectal swabs. C.S. also reported that her jaw popped, which had not happened before the incident. During the examination, C.S. was "quiet and very cooperative." Gabriel testified that C.S.' injuries were not of the type that

- 3 -

are consistent with "normal consensual sex, unless it's rough." Testing of swabs taken from C.S.' neck showed Brown's DNA. Testing of sperm fractions from C.S.' cervical swabs show Brown as the contributor.

C.S. testified that she had bite marks on her neck, a tear at the bottom of her vagina, and a tear on the side of her labia. She also experienced worsening of her depression and anxiety as a result of the incident. F.F. testified that the bruises on C.S.' neck were not present when they went to the bars or when C.S. went to sleep in Cornell's room.

Brown testified that on September 26, 2015, he bought and consumed alcohol, and went with a few friends to a bar to play pool. He went with a group back to Cornell's house and everyone was listening to music, drinking, and talking. He testified that he talked to C.S. and there was nothing intimate about how they interacted; there was no hand holding, touching, kissing, or hugging. Brown noticed that his ankle monitor needed to be charged and he left with Cornell's son. They stopped at Brown's house to pick up the charger and then stopped to buy food to share with the people at Cornell's house.

At one point, he went to the restroom at Cornell's house and when he came back, everyone else had left the kitchen and living room area. He went upstairs and found C.S. sitting on the end of the bed, smoking a cigarette. He testified that he held her hand, rubbed her back, and they started kissing. He testified that she did not tell him not to kiss her, she did not pull away and she appeared to be participating with him. He said they had consensual sex and that he did not bite her, asserting the bruises on the side of her neck were "hickeys." He did not use a condom and after they had sex, he "passed out." The next thing he remembered was Cornell waking him to say that a girl had claimed to have been raped.

Brown gave a statement to Ripley a few weeks after the incident. In the interview, he stated that he had been at an adult entertainment club prior to going to Cornell's house. He testified that he had told Ripley it was a club, rather than a bar, because he did not want his parole officer to know he had been drinking at a bar. He acknowledged at trial that he had been in violation of the terms of his parole. He told Ripley that he left Cornell's house around midnight, but testified at trial that he had been "mixed up" and had actually left Cornell's house around 5 a.m.

## IV. ASSIGNMENTS OF ERROR

Brown asserts the district court erred in failing to determine whether he was competent to stand trial. He asserts the court allowed certain prejudicial evidence to be introduced at trial, and that he was denied a fair trial. He asserts his trial counsel was ineffective, and the evidence was insufficient to sustain a conviction for first degree sexual assault. He asserts the court abused its discretion by imposing an excessive sentence.

## V. STANDARD OF REVIEW

A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *State v. Hernandez*, 299 Neb. 896, 911 N.W.2d 524 (2018).

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018). When reviewing a claim

of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's conclusion. *State v. McGuire, supra.*

In reviewing a criminal conviction for a sufficiency of the evidence claim, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Ratumaimuri*, 299 Neb. 887, 911 N.W.2d 270 (2018).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Russell*, 299 Neb. 483, 908 N.W.2d 669 (2018). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## VI. ANALYSIS

### 1. COMPETENCY

Brown asserts the district court erred in failing to determine his competency to understand and participate in the trial proceedings. Brown argues the court failed to fully investigate the impact that missed doses of medication would have on his competency.

A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense. *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018).

Trial testimony was scheduled to begin on January 4, 2017. Brown's counsel immediately informed the district court that Brown had been moved to the jail prior to trial and that he had not received his medications the previous night or that morning. Brown's counsel stated that Brown was taking several pain medications and at least one psychotropic medication to help with anxiety. Counsel stated that Brown was tired because one of the medications helps him sleep and because he missed it he did not get much sleep at the jail. Counsel stated that he and Brown had a coherent conversation on the morning of trial and he believed Brown understood what was going on. The district court determined that the medications had been ordered for Brown, and they would be brought to him, and made available from that point on. Brown was taking an antidepressant, an anxiety medication, and a medication for nerve pain. Brown confirmed that he typically took three or four medications. The court stated that the medications that Brown had missed were "no-miss" prescriptions, which meant that missing the doses were not detrimental to his health.

The court inquired to determine whether Brown felt the interruption in his medication would interfere with his ability to understand the proceedings. Brown responded, "I would say it does." The court asked further questions to determine whether Brown was oriented to time and place and understood the purpose and nature of the proceedings. Brown gave appropriate responses to the court's questions. The court asked Brown if he was able to communicate with his attorney regarding the case and he responded in the affirmative. The court asked whether there was anything

Brown did not understand, and Brown stated there was not. Brown's counsel confirmed that he believed Brown understood what was happening and while Brown may have been affected by not taking his medication, that did not prevent him from understanding what was happening. The district court asked whether defense counsel wanted to proceed and he responded that he did. The district court asked Brown if that was also his decision, and Brown confirmed that it was.

Brown asserts the trial court "erred in determining whether appellant was competent to stand trial." Brief for appellant at 18. It was certainly not an error for the court to ask questions to determine whether Brown was competent once it was brought to the court's attention that Brown had missed doses of his prescribed medication. The issue appears to be whether the trial court erred in determining that Brown was, in fact, competent to stand trial. The record refutes any allegation that Brown was incompetent. Brown informed his counsel that he had missed doses of his medication and he was able to describe the perceived changes in his physical and mental condition which resulted from the missed medication. The record shows that Brown had a coherent conversation with his attorney prior to trial and his responses to questions during the colloquy with the court were appropriate and reflected his knowledge of the circumstances. Brown stated that he was under stress and anxiety, which are common conditions for defendants in a criminal trial and do not necessarily render a defendant incompetent to stand trial. Both Brown and his counsel confirmed that they wished to proceed with trial. We find the trial court did not err in determining that trial could continue on January 4, 2017.

## 2. EVIDENTIARY OBJECTIONS

Brown asserts the district court erred in the admission and preclusion of evidence after timely objections, and as a result, prejudicial evidence was admitted at trial.

Ripley testified that he had investigated approximately 40 to 65 sexual assault cases in the course of his career. He was asked how many times he had seen "injuries like this," in reference to C.S.' injuries, and Brown objected on relevancy. The objection was overruled and Ripley answered that this was the first time he had seen injuries like those sustained by C.S. Brown asserts on appeal that the court erred in overruling his objection. In his argument, Brown gives a definition of relevant evidence, but does not argue why this information was not relevant or how it prejudiced him. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). A generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered. *Id.*

Brown also asserts the court erred by sustaining the State's hearsay objection, when trial counsel asked Ripley who C.S. told him she was with on the night of the incident. He asserts he was attempting "to impeach [C.S.], through a prior inconsistent statement." He argues that "[o]ne way to impeach a witness' credibility is to show that a witness previously made a statement contradictory to her trial testimony." Brief for appellant at 25.

Neb. Rev. Stat. § 27-613(2) (Rreissue 2016) provides that extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interest of justice otherwise require.

It would have been appropriate for Brown's counsel to impeach C.S. about her statements to Ripley, her statements during her deposition, and her testimony. However, the record shows that C.S. was not asked at trial to identify who she told Ripley she was with on the night of the incident. Nor was she asked whether her statement to Ripley was different from the testimony she provided at trial. Brown attempted to prove a prior inconsistent statement with extrinsic evidence, without confronting C.S. herself. The court did not err in sustaining the State's hearsay objection.

### 3. Fair Trial

Brown asserts he was denied his right to a fair trial guaranteed by the Sixth Amendment to the U.S. Constitution, and article I, § 11, of the Nebraska Constitution. He argues that the district court made two errors; in questioning a specific juror after an irregularity during trial, and in retaining the juror after the irregularity came to light.

The record shows a juror came in contact with a courtroom observer in the restroom of the courthouse during a trial recess. The observer was overheard making comments about the trial. The juror reported the contact to the bailiff, who informed the court. Speaking in low tones at the bench, the court inquired of defense counsel if he knew the identity of the man sitting in the back of the courtroom, and counsel stated his understanding that the man was a friend of Brown's sister. Outside of the presence of the jury, the court questioned the observer, who stated that he was a friend of Brown's sister and he was watching the trial for her. He did not recall exactly what he had said, but said it was possible that he was talking to himself in the restroom, and he did not know a juror was in the room. The court banned the man from the courtroom and the floor of the courthouse for the remainder of trial.

The juror was brought into the courtroom. He reported that a man he had seen in the courtroom was mumbling about something in the restroom. He heard the man say, "That guy's not a rapist. He just got drunk." The juror did not make eye contact with the man, and he left the restroom and notified the court. The court inquired as to whether the incident or the contact with the man would affect the juror's ability to continue to be a fair and impartial juror. The juror replied that it would not affect his ability to be fair and impartial and stated that he had not told anyone else about the contact. The court admonished the juror to rejoin the jury, and not to discuss the incident or the discussion before the court with the rest of the jury. Defense counsel stated that Brown had no objection to the juror continuing to serve.

After the jury returned to the courtroom, the court asked the members of the jury to raise their hands if they had been subject to conversations during recess. The only juror who indicated that he or she had heard any conversations or comments during the recess was the juror who had been individually questioned. Brown argues that the court erred in "its process of determining whether other jurors had been exposed to any improper contact," because through the court's questions, the other jurors were made aware that one of the jurors had heard something during the recess. He argues that the jurors should have been questioned individually to determine their impartiality. Brown also asserts the court erred in allowing the juror to continue to serve after coming into contact with the observer.

Brown had the opportunity to object to the court's questions at the time of trial. The failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v.*

*Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017). We find these assignments of error are waived.

We note that Brown does not raise these issues in his assignments of error regarding ineffective assistance. The statements of the observer indicated his belief that Brown was not guilty. The court asked the juror whether he could continue to serve as a fair and impartial juror and took steps to ensure that the remainder of the jury would not be informed of the nature and content of the man's statements. The court questioned all of the jurors and none alerted the court that there had been any additional irregularities during trial, inside or outside of the courtroom. Even if these issues were raised, his arguments would be unsuccessful because Brown cannot show that there is a reasonable probability that the result of the proceeding would have been different if counsel had objected.

### 4. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Brown asserts he was denied his right to effective trial counsel guaranteed by the Sixth Amendment of the U.S. Constitution, and Article I, Section 11 of the Nebraska Constitution.

Brown is represented in this direct appeal by different counsel than the counsel who represented him at the trial level. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise the issue will be procedurally barred. *State v. Robeson*, 25 Neb. App. 138, 903 N.W.2d 677 (2017), citing *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015).

A claim of ineffective assistance need not be dismissed merely because it is made on direct appeal. *State v. Casares, supra.* The determining factor is whether the record is sufficient to adequately review the question. *Id.* When the claim is raised on direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.* General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *Id.*

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instance where it was clear from the record that such claims were without merit or in the rare case when trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *Id.* An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id.*

Brown raises four allegations of ineffective assistance of trial counsel in this appeal. We address each allegation in turn.

(a) Failure to Ensure Brown Was Competent for Trial

Brown argues trial counsel was ineffective for failing to ensure he was competent for trial. Nebraska case law is clear that defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010). In this case, the issue was adequately raised when defense counsel brought to the court's attention the fact that Brown had missed a few doses of his medications during transport for trial. The court investigated the issue and engaged in a colloquy with Brown to determine whether he was aware of the nature and circumstances of the proceedings. Brown indicated that it was his wish to continue with trial. As previously discussed, the court did not err in determining that Brown was competent to stand trial, thus trial counsel did not fail "to ensure [Brown] was competent for trial" and he was not ineffective.

(b) Failure to Limit Ripley's Interview and Testimony

Brown asserts trial counsel failed to file pretrial motions resulting in inadmissible and prejudicial evidence being admitted at trial. He argues that trial counsel was ineffective for failing to redact the video recording of Ripley's interview of Brown and for failing to seek a motion in limine to exclude certain "opinion testimony" from Ripley regarding the nature of C.S.' injuries.

The record shows that Ripley interviewed Brown in October 2015, and a video recording of the interview was entered into evidence as exhibit 25. On cross-examination, trial counsel questioned Ripley about certain statements he made in the interview. He asked whether Ripley recalled making a statement that C.S.' injuries were "not consistent with consensual intercourse." Ripley testified that did not know whether those were the exact words that he used, but he would have said "something similar to that."

Brown asserts trial counsel's failure to file a pretrial motion to redact this statement, or to request a limiting instruction led to the introduction of "inadmissible hearsay that was extremely prejudicial." Brief for appellant at 32. He argues that there was no probative value in the investigator's "improper opinion testimony" and even if there was, the probative value was outweighed by the unfair prejudice and its tendency to mislead the jury, and it invaded the province of the jury. *Id.* at 31.

We find trial counsel was not ineffective for not seeking to redact the interview recording. It is clear from the record that Ripley's statement during the interview was intended to elicit information from Brown about the nature and extent of the sexual contact Brown had with C.S. on the night of the incident. Trial counsel adequately cross-examined Ripley about the investigation, and whether Ripley had medical training upon which to base an opinion that the injuries were not consistent with consensual sex. He testified that he did not, and that he had received information from Gabriel, a trained nurse, who also testified at trial. Brown cannot show that trial counsel's performance was deficient because counsel did not seek a motion in limine. Even if trial counsel was deficient in failing to redact the video or seek a motion in limine, Brown was not prejudiced because the issues were addressed by counsel at trial and there is no showing that any pretrial efforts to limit the evidence would have been successful.

Brown also states, in passing, that trial counsel was ineffective for failing to make an offer of proof to explain why the impeachment of Ripley about C.S.' alleged prior inconsistent statement

was necessary, thus making appellate review impossible. As previously discussed, the court did not err in sustaining the State's hearsay objection. Defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Vo, supra.*

### (c) Failure to File Motions in Limine

### *(i) "Rape Kit"*

Brown asserts trial counsel failed to file a motion in limine prohibiting the State or any of its witnesses from referring to the "Sexual Assault Evidence Collection Kit as a 'Rape Kit.'" Brief for appellant at 33.

C.S. testified that she went to the hospital on the morning of September 27, 2015, to "do a rape kit." The evidence collection kit was referred to as a "SANE kit" during the testimony of Ripley and Gabriel. Brown argues that "allowing the misidentification of an exhibit with terms that are inherently prejudicial, the State was able to put before the jury evidence that mischaracterized the exhibit and the nature of the examination." *Id.* at 34.

Brown must allege sufficient facts which, if proved, would establish a reasonable probability that the outcome of the case would have been different. Brown's allegation in connection with this claim is conclusory. He does not allege the basis on which the terms would have been prohibited at trial, or how the use of the term prejudiced him such that counsel was ineffective for failing to prevent the use of the term. Brown did not satisfy his burden to allege facts amounting to prejudice with respect to this allegation. See *State v. Marks*, 286 Neb. 166, 835 N.W.2d 656 (2013).

Even if Brown could show deficient performance, he cannot show that he was prejudiced. The record shows that C.S. testified she had submitted to a "rape kit." She used the term only one time, and immediately following her statement, the State clarified the term used by asking, "So they did a sexual assault exam on you?" The jury was aware that C.S. alleged that she had been sexually assaulted and that Brown was charged with sexual assault. The jury also was informed that C.S. submitted to an examination as part of the investigation of the alleged crime. The record shows that Brown himself used the term "rape" in reference to the allegations which arose out of the incident on September 27, 2015. Even if Brown can show that trial counsel was deficient for failing to seek the exclusion of the term "rape kit," we find Brown was not prejudiced.

Further, to the extent that Brown argues the use of the term "SANE kit" is prejudicial, we find this argument is without merit. The jury was made aware that Gabriel is certified as a SANE nurse and that she collected a kit of evidence as part of the investigation in this case. It is natural to refer to evidence collected by a SANE nurse in connection with sexual assault allegations as a "SANE kit," even if the title of the document in the exhibit is "Sexual Assault Evidence Collection Kit." The term used is not unduly prejudicial and does not mischaracterize the evidence. Thus, trial counsel was not ineffective for failing to seek the exclusion of the term "SANE kit" from trial.

### *(ii) Bite Marks*

Brown asserts trial counsel failed to file a motion in limine requesting the court to enter an order prohibiting the State from directly or indirectly eliciting testimony from any witness, whether in the form of an opinion or otherwise, that bruising observed on C.S.' neck were bite marks. He

argues that C.S. testified there was intense pressure or pain on her neck, but "[s]he never testified to being bitten." Brief for appellant at 34. He argues that Ripley did not have the "necessary expertise to testify to the origin of the alleged bruises," and Ripley's testimony was without sufficient foundation. *Id.*

Brown's assertion that C.S. did not testify that she was bitten is inaccurate. C.S. stated "I woke up to the pressure and biting on my neck." She testified that she sustained multiple physical injuries as a result of this incident, including "the bite marks on my neck." She identified exhibit 12 as a picture depicting "me with the bite marks on my neck," and stated the "bite marks" were made by Brown. The jury heard C.S.'s account of how the marks on her neck were formed, as well as Brown's account that the marks were "hickeys." Brown does not offer an appropriate basis for the proposed motion in limine, or a reason the district court would have granted it. Defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Vo, supra*.

### (iii) "Victim"

Brown also asserts counsel was ineffective for failing to file a motion in limine prohibiting references to C.S. as "the victim." He argues the term is presumptive and had the potential to "inflame the passion of the jury," and thus C.S. should have been referred to as "an alleged victim." Brief for appellant at 34, 35. He argues that by allowing C.S. to be referred to as the victim, this presupposes that a sexual assault did in fact occur, which is inconsistent with his presumption of innocence.

The record shows that Ripley referred to C.S. as the victim twice in his testimony about the investigation following the 911 call. The record also shows the State made four references to the victim in questioning Gabriel, the sexual assault nurse examiner who examined C.S. on the morning of the incident.

Brown cites *U.S. v. Alaboudi*, 786 F.3d 1136 (8th Cir. 2015), in which the defendant's trial counsel filed a motion in limine requesting limits on the use of the term "victim," and the motion was granted. Brown has shown that a trial court in another jurisdiction granted a motion in limine prohibiting the word "victim," but cannot show that such a motion would have been successful in this case. Thus, he has failed to show that trial counsel performed deficiently.

Further, the record shows that the jury was instructed that Brown is "presumed to be innocent" and that the charge against him was not "evidence of anything. The charge is simply an accusation, nothing more." The jury was also instructed that "'Victim' means the person alleging to have been sexually assaulted." The jury instructions make it clear that Brown is presumed to be innocent and it is the duty of the jury to decide whether Brown is guilty or not guilty of the crime charged based upon the evidence presented by the State. Brown was not prejudiced by trial counsel's alleged failure to file a motion in limine requesting the prohibition of the word "victim" in reference to C.S.

### (iv) "Improper Opinion Testimony"

Brown asserts trial counsel was ineffective for failing to file a motion in limine to exclude "improper opinion testimony from Investigator Ripley and Sue Gabriel, SANE nurse, regarding whether the injuries observed were consistent with a sexual assault and inconsistent with

consensual sex." Brief for appellant at 36. The portion of this assignment of error with regard to Ripley has been previously discussed.

We find trial counsel was not ineffective for not seeking a motion in limine to exclude Gabriel's opinion regarding the consensual or non-consensual nature of the sexual contact between C.S. and Brown. The evidence shows that on direct examination, Gabriel testified that the injuries to C.S.' genitals are not the type typically seen following "normal consensual sex unless it is rough." On cross-examination, trial counsel elicited testimony that the injuries could also have been caused by blunt force trauma or friction. Gabriel testified that friction can occur during normal sexual relations by a woman whose body does not lubricate appropriately due to a number of factors, including menopause, age, medical diseases, or medication. The issue was adequately addressed by trial counsel at trial, and Brown cannot show that he was prejudiced by trial counsel's alleged failure to seek a motion in limine.

### (d) Failure to File Motion to Disclose Expert Testimony

Brown asserts trial counsel was ineffective for failing to request an order requiring the State to disclose prior to trial the name, address, and curriculum vitae of any person from whom the State intended to elicit testimony. He also asserts his counsel failed to request the intended testimony to be introduced as well as the facts or data underlying the witnesses' opinions. He argues that he was prevented from "effectively preparing for such testimony in a manner consistent with [his] right to confront his accuser." *Id.*

Brown does not identify any witnesses or testimony presented at trial that would have been disclosed pursuant to such a motion and he does not assert how any such information would have aided in his defense had it been disclosed prior to trial. Because this alleged error has not been specifically assigned and specifically argued, we will not consider the assignment on the merits. See *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

### (e) Failure to Object to Improper Evidence

Brown alleges his trial counsel failed to object to the improper testimony given by C.S., F.F., Ripley, Hein, and Gabriel, and, as a result, prejudicial evidence was placed before the jury.

#### (i) Leading Questions

On direct examination, C.S. was asked, "Do you think screaming might have put you in danger?" C.S. answered "Yes," and Brown asserts trial counsel should have objected, because the question was leading. Brown also asserts trial counsel failed to object to several other leading questions, including whether C.S. was intoxicated, whether she was scared, and whether she had passed out or she had simply fallen asleep. The State asserts counsel was not deficient for failing to object to "every single statement to which an objection could have been made." Brief for appellee at 24. The State reasons that many times objections are overruled and "an attorney who objects too often and is overruled may be viewed negatively by a jury." *Id.*

The question whether or not to object has long been held to be part of trial strategy. *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013). When reviewing claims of alleged ineffective assistance of counsel, "'[t]rial counsel is afforded due deference to formulate trial strategy and

tactics.'" *Id.* at 30, 824 N.W.2d at 738. There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. Because of this deference, the question whether the failure to object was part of counsel's trial strategy is essential to a resolution of these ineffective assistance of counsel claims.

Brown also asserts his trial counsel should have objected during F.F.'s testimony when she was asked whether C.S. thought F.F. would stay in the bed with her when she was asleep. He asserts the question calls for speculation and that trial counsel also failed to object when counsel asked the leading question: "'You didn't say, "I'm going to leave the bed and come downstairs and hang out with Cornell?"'" Brief for appellant at 39.

There is no evidence in the record that would allow us to determine whether Brown's trial counsel consciously chose as part of a trial strategy not to object to the questions posed. Therefore, because the record is insufficient to adequately review these claims, we do not reach these claims on direct appeal.

*(ii) Hearsay*

Brown also asserts counsel should have objected when C.S. stated that she asked someone in the home if he knew where her sister was and he replied "'No, but you can go back upstairs with that creeper, [Brown].'" *Id.* at 38. Brown argues trial counsel should have objected, as the statement was hearsay, and counsel should have requested that the answer be stricken from the record. The State notes that Brown used this testimony in closing to support his defense theory that C.S. consented to having sex with Brown and then regretted it because she could have lost her job. Brown argued that "embarrassment and regret is a reason to make up a story." Nonetheless, the record is insufficient to determine whether the decision not to object was made as part of trial strategy. We do not reach this claim on direct appeal.

Brown asserts trial counsel failed to object to the testimony of officer Hein, of the Lincoln Police Department, when he was asked "What did [C.S.] say to you?" He argues that there is "no defense strategy that would include letting an officer testify before the jury regarding the events of the alleged offense as told to him by the person purporting to be the victim." *Id.* at 40. Even if trial counsel was deficient for failing to object on hearsay grounds, Brown cannot show that he was prejudiced, as C.S. had already testified and provided the same information, including the purpose of her trip to Lincoln and her account of what had happened at Cornell's house.

Brown argues trial counsel failed to object when F.F. testified as to what C.S. said when she called F.F. on September 27, 2015. Much of the information in F.F.'s testimony was already admitted as evidence through the recording of the 911 call. Further, Brown admitted that he had sex with C.S. so it was not prejudicial for F.F. to say that C.S. thought the man on top of her might have been Brown.

Brown argues trial counsel failed to object when Cornell testified regarding his observations of C.S. when she emerged from the home, and what he heard her say to F.F. Cornell testified that C.S. said "he raped me" and when he asked who it was, she said "that guy." It is clear that Brown is the individual who has been charged with first degree sexual assault and Brown testified that Cornell woke him up on September 25, 2015, to tell him a girl claimed to have been

- 13 -

raped. Even if trial counsel was deficient for failing to object, Brown cannot show that he was prejudiced by the testimony that was already in the record.

Further, this evidence would have been admissible as an exception to the hearsay rule as it was an excited utterance. An excited utterance is defined as a statement made during a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. Neb. Rev. Stat. § 27-803(1) (Reissue 2016). Multiple witnesses testified that C.S. was upset, emotional, and crying, and the evidence shows that C.S. sought comfort from F.F. within a short period of time after she left the bedroom. Brown cannot show that he was prejudiced by trial counsel's failure or decision not to object to Cornell's testimony.

Brown also asserts Cornell's relationship with F.F. provided him motivation to lie, and that his testimony was biased. Cornell testified that F.F. is his girlfriend, but that he and F.F. were not quite "steady" at the time of the incident. Counsel was not deficient simply because he did not cross-examine Cornell regarding the nature of his relationship with F.F., given that this information was already in evidence.

### (f) Failure to Call Witnesses Brown Requested

Brown asserts trial counsel was ineffective for failing to call two witnesses he requested. First he alleges Cornell Culver, Jr. (C.J.) should have been called to testify because it "is anticipated" that C.J. would testify that he observed Brown and C.S. together in the bedroom, which would corroborate Brown's theory that he and C.S. engaged in consensual sex. Brief for appellant at 42. The record shows that defense counsel subpoenaed the witness for depositions, and possibly trial, but C.J. was never served. The record also shows that C.J. was in jail "sitting out some fines" at the time of trial. Trial counsel stated his belief that C.J. could be transported for trial, but there is nothing in the record showing why C.J. did not testify. The record is insufficient to address this error on direct appeal.

Brown also alleges trial counsel should have called his sister to serve as an impeachment witness. He alleges his sister could have testified that Cornell was biased because of his relationship with F.F., and this bias affected his testimony. Brown alleges she would have testified that Cornell told her "he would say whatever was necessary to stay with [F.F.]." *Id.*

Cornell and F.F. both testified regarding the nature of their relationship, so the jury was given the opportunity to evaluate the credibility of his testimony in light of his relationship with F.F. However, Brown's sister's testimony with regard to specific statements Cornell made to her is not in the record. Therefore, we find the record is insufficient to address this error on direct appeal.

### 5. SUFFICIENCY OF EVIDENCE

Brown asserts the evidence presented at trial was insufficient to support a conviction for first degree sexual assault. He argues that pursuant to § 28-319(1)(a) and (b), the State failed to meet its burden in proving beyond a reasonable doubt that Brown knew or should have known that C.S. was mentally or physically incapable of resisting or appraising the nature of his conduct. Additionally, he argues the State failed to prove that Brown submitted C.S. to sexual penetration without consent.

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017).

The State was required pursuant to § 28-319 to put forth evidence that on or about September 27, 2015, Brown subjected C.S. to sexual penetration without her consent, or when he knew or should have known that she was mentally or physically incapable of resisting.

C.S. testified that on the evening of September 26, 2015, she went to several bars in downtown Lincoln. C.S. and multiple other witnesses testified that C.S. was refused entry to the last bar. C.S. and F.F. went to Cornell's house. The witnesses, including Brown, all testified that Brown and C.S. had a conversation at the dining room table, and that there was no flirting, touching, kissing, or hand holding. C.S. testified that she went to sleep and woke up to someone on top of her, she was no longer wearing pants or underwear, and she was being vaginally penetrated by the man's penis. C.S. testified that she had been intoxicated, and she was asleep prior to the incident. Therefore, she was not capable of giving consent.

Brown admitted that he and C.S. had sex, but asserted that C.S. was awake, she appeared to be participating, and she did not bite, scratch, or push him away. He argues the sex was consensual. On appeal, Brown asserts that C.S. was not intoxicated and there was no showing that she lacked the capacity to consent.

The jury heard both Brown's and C.S.' accounts of the early morning hours of September 27, 2015, and found Brown guilty of sexual assault in the first degree. After viewing the evidence in the light most favorable to the State, the evidence presented at trial was sufficient to support Brown's conviction.

### 6. EXCESSIVE SENTENCE

Brown asserts the sentence imposed by the district court is excessive and constitutes an abuse of discretion. He argues the district court failed to consider his likely success with a probationary sentence, his non-violent criminal history, and his general life circumstances.

Brown was convicted of first degree sexual assault, a Class II felony punishable by imprisonment for a minimum of 1 year and a maximum of 50 years. Neb. Rev. Stat. § 28-105 (Supp. 2015). Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018).

When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.*

The sentence imposed on Brown's conviction was within the statutory limits, and the record shows the court considered and applied the necessary sentencing factors. The court reviewed the record for the nature and circumstances of the crime and the history, character and condition of the defendant. The court found that imprisonment was necessary for the protection of the public, as there was a substantial risk that during a period of probation, Brown would engage in criminal conduct. The court also found that a lesser sentence would depreciate the seriousness of Brown's crime and promote disrespect for the law.

The record shows that while Brown does not have a history of violent or sexual offenses, he has a significant criminal history and he was on parole at the time this crime occurred. The probation office conducted an interview of Brown using the Level of Service/Case Management Inventory to determine the level of risk that Brown presents to the community and risk to recidivate. Overall, he scored in the "very high risk to reoffend" range with "high risk" scores for criminal history, education/employment, leisure/recreation, and antisocial pattern, and "very high risk" scores for companions, alcohol/drug problems, and procriminal attitude/orientation. In addition, the Vermont Assessment for Sex Offender Risk was completed and he scored in the high risk range. We cannot find an abuse of discretion in the sentence imposed.

## VII. CONCLUSION

For the aforementioned reasons, the judgment of the district court is affirmed.

AFFIRMED.