IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. BOLDEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LAWRENCE O. BOLDEN, APPELLANT.

Filed March 7, 2023.    No. A-22-264.

Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed.

Jason E. Troia, of Dornan, Troia, Howard, Breitkreutz, Conway & Dahlquist, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Lawrence O. Bolden pled no contest to one count of second degree murder. The Douglas County District Court sentenced him to 40 to 50 years' imprisonment. Bolden claims the district court erred in finding the factual basis supported his plea, in denying his motion to withdraw his plea, and in imposing an excessive sentence. Bolden also claims his trial counsel was ineffective for numerous reasons. We affirm.

## II. BACKGROUND

On March 5, 2021, the State filed an information charging Bolden with three counts: count 1, second degree murder, a Class IB felony, pursuant to Neb. Rev. Stat. § 28-304 (Reissue 2016); count 2, use of a deadly weapon to commit a felony, a Class IC felony, pursuant to Neb. Rev. Stat.

- 1 -

§ 28-1205(1)(a) and (c) (Reissue 2016); and count 3, possession of a deadly weapon by a prohibited person, a Class ID felony, pursuant to Neb. Rev. Stat. § 28-1206(1)(a) and (3)(b) (Cum. Supp. 2022). On March 8, the district court entered an order appointing the "Public Defender's Office" to represent Bolden and accepting Bolden's plea of not guilty.

On November 1, 2021, Bolden filed a pro se motion requesting that the district court "dismiss [his] current counsel and to appoint new counsel." Bolden alleged that his trial counsel "has shown himself to be ineffective" for "violating confidentiality of information" and failing to investigate. Bolden claimed that "mutual trust and respect" had "broken down" between his trial counsel and him and that new counsel should be appointed. On December 9, the court held a hearing on the motion. Bolden appeared in person with an assistant public defender. Defense counsel indicated his belief that representation could continue. Bolden informed the court that he felt there had been a breach of confidentiality because he was informed by his trial counsel that counsel had spoken to other people "other than the attorney that's assisting on [Bolden's] case . . . about [Bolden's] case"; Bolden "felt like that was a breach of the . . . client-attorney privilege." The court entered an order denying the motion that same day, stating that an "indigent defendant who is appointed a public defender, or private attorney . . . does not have the luxury of selecting his attorney" and the court found "no merit" to Bolden's claim that "his attorneys are not acting [in Bolden's] best interests."

A hearing was held on January 7, 2022, where, pursuant to a plea agreement, Bolden pled no contest to count 1 (second degree murder) of the information and the State moved to dismiss counts 2 and 3 (deadly weapon charges). Bolden was represented by a different assistant public defender from the same office. Prior to entry of the plea, the district court asked Bolden directly if he had ever been treated for any mental illness or whether he suffered from any mental or emotional disorder. Bolden responded affirmatively, and when asked to say "what that is," Bolden responded, "Schizoaffective, schizophrenia, bipolar, PTSD, depression." When asked if he was taking any medication "for any of those now," Bolden responded, "Currently, no." When asked if he was "thinking clearly here today," Bolden replied, "Yes." Bolden was advised that he still had the option of entering a plea of not guilty or not responsible by reason of insanity or that he could say nothing; Bolden acknowledged his understanding.

Bolden pled no contest to the charge of murder in the second degree, and the district court informed Bolden that before his plea could be accepted, the court had to advise him of certain constitutional rights he was giving up, including his rights to: a speedy trial and unanimous jury verdict; confront all witnesses; subpoena witnesses; the presumption of innocence unless and until the State proves beyond a reasonable doubt that he committed the offense charged; remain silent; and be represented by counsel at all stages of the criminal proceeding, including trial and appeal. When asked by the court if he understood those rights, Bolden replied, "Yes." When advised that by pleading no contest, if that plea was accepted, Bolden would be giving up all those rights except the right to counsel, Bolden replied, "Yes."

The district court further advised Bolden that in order to be guilty of murder in the second degree, the State would have to prove by evidence beyond a reasonable doubt that on or about January 18, 2021, Bolden intentionally but without premeditation caused the death of the victim in Douglas County, Nebraska. When asked if he understood what the State had to prove, Bolden replied, "Yes." When Bolden was asked if he understood that the "maximum penalty for this

charge is life imprisonment," Bolden replied, "Yes, sir." Bolden was also advised that by pleading no contest, he was waiving his right to a hearing outside the presence of a jury to determine whether or not any statement he may have made to any police officer was freely and voluntarily given. Bolden acknowledged his understanding of that waiver.

Finally, before accepting Bolden's plea, the district court informed him that the court must be satisfied there was a sufficient factual basis, which the State provided as follows:

[O]n January 18th of 2021, officers from the Omaha Police Department responded to a shots fired at [a motel] located at [an address on] J Street, here in Omaha, Douglas County.

Upon arrival to that location, officers found the victim, Andrew Brown, suffering from a gunshot wound to the abdomen. The officers also retrieved video of the incident showing the defendant, Mr. Lawrence Bolden, shooting and striking the victim, Andrew Brown.

The defendant subsequently was interviewed at Central Headquarters and admitted to having a firearm and using it to shoot the victim, Andrew Brown. The victim did die, and the official cause of death from the autopsy was the gunshot wound to the abdomen.

All events in Douglas County, Nebraska.

The district court asked defense counsel whether there was "[a]nything to add to the factual basis." In response, Bolden's trial counsel stated the following:

I would note, obviously, what we're discussing will be discussed more thoroughly at the sentencing and with the letter I'm going to submit before sentencing. I do note the video showed my client firing. They did find Mr. Brown shot in an area that would be consistent with that.

I would note too that my client made statements admitting to that. We are not offering it for defense, but . . . there had been a gun brandished by someone else, then [Bolden] heard shots fired from the other side. And also, he was under the influence of meth at the time too, which we're asking for mitigation.

Obviously, we'll get into far more details at sentencing.

The district court then asked Bolden's counsel whether "[Bolden's] plea of no contest in this case is consistent with the law and the facts," to which Bolden's counsel responded, "Yes." The court accepted Bolden's plea and found Bolden guilty of murder in the second degree. The court further granted the State's motion to dismiss counts 2 and 3 of the information.

On March 28, 2022, the district court held a hearing, indicating that it had received a letter written by Bolden "suggesting he wants to withdraw his plea to the charge of second-degree murder." Both assistant public defenders who had previously appeared before the court with Bolden were present for this hearing. The court stated that it would consider Bolden's letter "a motion to withdraw his plea" which the court would file with the Clerk of the District Court. In the letter, Bolden set out various reasons for his request. He claimed his trial counsel informed him he would "receive a 10 year term in prison" and that he understood 10 years "would mean [he] would do 5 yrs. under Nebraska's good-time laws." After "further inquiring," he now understood that was "not possible." He also alleged that his trial counsel had failed to file pre-trial motions, "follow up on [his] mental health diagnoses," "follow up on surveillance video," and had informed

- 3 -

his family he would get a 10-year sentence, and did not "clearly convey the terms" of the plea agreement. Finally, the letter claimed that "[i]n short, [Bolden] would not have taken the plea-deal of 2nd Degree Murder if [he] knew that it statutorily carried a minimum of 20 years & NOT 10 years, (5 years after good time)."

At the hearing, the district court informed Bolden that if he were to withdraw his plea, the State would likely "reinstate Counts 2 and 3," the charges for use of a deadly weapon and possession of a deadly weapon by a prohibited person. The court asked Bolden if he understood that if he was convicted of the "murder charge or a voluntary manslaughter" in Count 1, "that the use of a deadly weapon carries a mandatory minimum of five years up to 50 years' imprisonment." Bolden replied, "Yes, sir." The court also informed Bolden that the use of a deadly weapon's charge would be required to be consecutive to any sentence ordered in Count 1, and that the possession of a deadly weapon by a prohibited person "carries a mandatory minimum of three years up to 50 years' imprisonment." Bolden acknowledged his understanding and when asked if he still wanted to withdraw his plea, Bolden responded "Yes, sir." The court then stated that it would have the court reporter "type up the January 7, 2022, plea colloquy," receive it as an exhibit, and "[b]ased upon what happens in that plea colloquy, [the court will] decide whether or not [Bolden] can withdraw [his] plea."

Bolden's initial assistant public defender indicated that Bolden's request to withdraw his plea was against counsel's advice "due to the charges that were dismissed, unfiled charges, and him being habitual eligible." Defense counsel informed the district court that "Bolden would like to tell the Court that he's currently not on medication . . . he's saying he's having auditory and visual hallucinations." Defense counsel then stated, "I don't have any evidence of that from the jail. I have his word. They're trying to find medications for him at the jail." Bolden's counsel further informed the court that "we did have him evaluated by our office, and had that been an issue, we would have filed the appropriate notices and motions with the Court."

Bolden then personally addressed the district court, stating that he had asked that his medical records be released. He stated that he had been "seeing the mental health [providers] in the Douglas County [jail]" and "they have been aware fully of my side effects behind my mental health." Bolden stated that he "was taking medications before, but [he] was taken off those medications because of the effect of how much it was being effective for [him]." He stated that he has "a lot of allergies to medications" so he cannot "just take any medication or certain medications that they provide there that I'm already allergic to and have side effects to." He stated that at the time he entered his plea, he informed the court that he was not "on medication at that point in time." He further stated that when he entered his plea, he did not realize that there would be "certain things that [he would] not be able to do" if he accepted the plea, "as far as rights that [he was] supposed to be entitled to." The court took the matter under advisement.

On April 1, 2022, the district court entered an order denying Bolden's motion to withdraw his plea. The court explained that Bolden did "not meet his burden to establish, by clear and convincing evidence, a fair and just reason to withdraw his plea." The court pointed out that two other firearm charges were dismissed as part of the plea, and 2 months after the plea, Bolden sent a letter seeking to withdraw his plea. The court observed that although Bolden had stated at the plea hearing that "he suffered from various mental disorders, he stated he was thinking clearly." The court summarized the various advisements given to Bolden at the plea hearing and then

- 4 -

addressed Bolden's claim that his counsel led him to believe he would receive a 10-year term in prison. The court found that Bolden's understanding was "impossible" since there is a 20-year minimum sentence for second degree murder. "[T]he court can find [n]o reason to believe that [Bolden's] attorney would suggest such a sentence was possible." Notably, the court pointed out that Bolden did not allege that he advised his attorney that he believed he should go to trial. The court further noted that there was also no agreement between Bolden or his counsel and the prosecutor as to the sentence, and even if there had been, the court was not bound by such an agreement.

After a hearing held on April 6, 2022, the district court sentenced Bolden to 40 to 50 years' imprisonment, with credit for 444 days already served.

Bolden appeals.

## III. ASSIGNMENTS OF ERROR

Bolden claims that the district court erred in (1) finding the factual basis supported his plea, (2) denying his attempt to withdraw his plea, and (3) imposing an excessive sentence. He further claims that (4) he received ineffective assistance of trial counsel when his counsel (a) failed to speak to witnesses, (b) failed to obtain his medical records, (c) failed to offer evidence at the hearing to withdraw his plea, (d) failed to present mitigating information at his sentencing hearing, and (e) "led him to believe he would receive a minimal sentence."

## IV. STANDARD OF REVIEW

A trial court is given discretion as to whether to accept a guilty plea, and an appellate court will overturn that decision only where there is an abuse of discretion. *State v. Russell*, 291 Neb. 33, 863 N.W.2d 813 (2015). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *State v. Jones*, 297 Neb. 557, 900 N.W.2d 757 (2017).

Prior to sentencing, the withdrawal of a plea forming the basis of a conviction is addressed to the discretion of the trial court, and its ruling will not be disturbed on appeal absent an abuse of that discretion. *State v. Williams*, 276 Neb. 716, 757 N.W.2d 187 (2008).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

## V. ANALYSIS

### 1. SUFFICIENCY OF FACTUAL BASIS

Bolden contends the factual basis provided by the State was insufficient to support a finding of guilty for second degree murder. A sufficient factual basis is a requirement for finding that a plea was understandingly and voluntarily entered and hence valid. *State v. Ettleman*, 303

Neb. 581, 930 N.W.2d 538 (2019). However, it is possible for a defendant to waive challenges to the factual basis under certain circumstances. In *State v. Ettleman, supra*, after finding that the State's factual basis was insufficient to support the offense, the Nebraska Supreme Court held:

> Our opinion today should not be read to preclude a defendant from being treated as having waived an objection to the sufficiency of the State's factual basis where the record of a plea colloquy demonstrates that the trial court specifically asked the defendant or his or her counsel whether the factual basis provided by the State is sufficient to support the plea and the defendant failed to object to its sufficiency upon inquiry by the court.

*Id.* at 594, 930 N.W.2d at 547.

Here, it was only after the district court presented two opportunities for Bolden's trial counsel to object to the State's factual basis that it accepted Bolden's plea. Following the State's pronouncement of its factual basis, the court asked Bolden's trial counsel whether there was "[a]nything to add to the factual basis." Bolden's counsel did not object to the factual basis presented by the State and instead confirmed that "the video showed [Bolden] firing" and that "[t]hey did find [the victim] shot in an area that would be consistent with that." He further stated that "[w]e are not offering it for defense, but . . . there had been a gun brandished by someone else, then [Bolden] heard shots fired from the other side. And also, he was under the influence of meth at the time too, which we're asking for mitigation." The court again provided Bolden's counsel with an opportunity to object to the factual basis provided by the State when it asked whether "[Bolden's] plea of no contest in this case is consistent with the law and the facts," to which Bolden's trial counsel responded "Yes."

Unlike *Ettleman*, the record here presents a clear case where the district court provided Bolden's trial counsel two opportunities to object to the sufficiency of the State's factual basis and he failed to do so while affirmatively asserting that the plea was consistent with the facts and the law being applied. On this record, we conclude that Bolden waived his objection to the sufficiency of the State's factual basis supporting the charge of second degree murder.

### 2. MOTION TO WITHDRAW PLEA

Bolden claims the district court erred in denying his request to withdraw his plea. However, the right to withdraw a plea previously entered is not absolute. *State v. Carr*, 294 Neb. 185, 881 N.W.2d 192 (2016). When a defendant moves to withdraw his or her plea before sentencing, a court, in its discretion, may sustain the motion for any fair and just reason, provided that such withdrawal would not substantially prejudice the prosecution. *Id*. The defendant has the burden to show the grounds for withdrawal by clear and convincing evidence. *Id*. Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *State v. Payne-McCoy*, 284 Neb. 302, 818 N.W.2d 608 (2012). Prior to sentencing, the withdrawal of a plea forming the basis of a conviction is addressed to the discretion of the trial court, and its ruling will not be disturbed on appeal absent an abuse of that discretion. *State v. Williams, supra*.

Although Bolden's letter seeking to withdraw his plea contained several alleged reasons in support of his request, we note that on appeal Bolden limits his argument to "two main reasons." Brief for appellant at 15. First, he claims the district court erred in denying his motion to withdraw

his plea on the basis that Bolden "misunderst[ood] . . . the minimum sentence for his offense." *Id*. Second, he claims he "was not receiving his normal medication for his psychological disorders at the time he entered his plea." *Id*. We will limit our discussion to those two issues.

(a) Misunderstanding of Minimum Sentence

Bolden claims his trial counsel told him he would receive a 10-year sentence, which he understood to mean "he would serve 5 years." Brief for appellant at 15. Bolden provides no authority or discussion in his brief to support why his understanding of what he claims his trial counsel told him constitutes a fair and just reason to allow him to withdraw his plea. A Class IB felony carries a 20-year minimum sentence and up to life imprisonment. It is not a mandatory minimum, so time served is eligible for good time credit. See Neb. Rev. Stat. § 83-1,110 (Reissue 2014) (committed offender shall be eligible for parole when offender has served one-half the minimum term of sentence; no such reduction shall be applied to any sentence imposing mandatory minimum term). If the district court had ordered the minimum 20-year sentence, Bolden would have been eligible for parole after 10 years with good time credit. Bolden does not claim that his counsel informed him he would only serve 5 years with good time; rather, that was an erroneous assumption made by Bolden.

Additionally, the record reflects that after advising Bolden of the constitutional rights he would be giving up by entering a plea, the district court asked Bolden if he understood that the maximum penalty for the second degree murder charge was life imprisonment. Bolden responded, "Yes, sir." The court asked if there was anything Bolden did not understand; Bolden responded, "No." Although the court did not specifically state any minimum term before accepting Bolden's plea, the court did ensure that Bolden understood that he could be sentenced up to life imprisonment. While the better practice would be to state the minimum and maximum range of the sentence to be imposed, a court's failure to do so does not automatically necessitate reversal. See *State v. Russell*, 291 Neb. 33, 863 N.W.2d 813 (2015) (court's failure to advise defendant of correct statutory minimum and maximum penalties does not automatically warrant reversal).

In order to support a finding that a plea of guilty or no contest has been entered freely, intelligently, voluntarily, and understandingly, the record must establish that the defendant knew the range of penalties for the crime with which he or she is charged. See *State v. Russell, supra*. In *Russell*, the defendant challenged his plea because he was not advised of the mandatory minimum sentence applicable to his conviction. However, the Nebraska Supreme Court determined that the trial court's failure to advise the defendant of the correct statutory minimum and maximum penalties did not automatically warrant reversal. See *Id*. The court stated, "'If it can be determined that the defendant understood the nature of the charge, the possible penalty, and the effect of his plea, then there is no manifest injustice that would require that the defendant be permitted to withdraw his plea.'" *Id*. at 41, 863 N.W.2d at 820 (quoting *State v. Rouse*, 206 Neb. 371, 375-76, 293 N.W.2d 83, 86 (1980)).

We conclude that Bolden was provided the necessary information to understand the nature of the charges against him, the possible penalties, and the effect of his plea. No manifest injustice requires permitting Bolden to withdraw his plea. Bolden acknowledged his understanding when he was specifically informed by the district court of the nature of the charge and that he was facing a maximum penalty of life imprisonment. Additionally, the effect of the plea agreement gave

Bolden the benefit of the State dismissing the charges for use of a deadly weapon (firearm) to commit a felony, a Class IC felony, and possession of a deadly weapon (firearm) by a prohibited person, a Class ID felony. The Class IC felony carries a mandatory minimum sentence of 5 years' imprisonment and up to 50 years' imprisonment, and because Bolden's offense involved the use of a firearm to commit a felony, any sentence for that offense would have to be imposed consecutively to any other sentence. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022) and § 28-1205(3). The Class ID sentence carries a mandatory minimum of 3 years' imprisonment and up to 50 years' imprisonment. The agreement to dismiss the two firearms charges eliminated the potential of mandatory minimums totaling 8 years' imprisonment, for which no good time credit would apply. Additionally, as noted by Bolden's counsel, it was against counsel's advice for Bolden to withdraw his plea "due to the charges that were dismissed, unfiled charges, and him being habitual eligible." If determined to be a habitual criminal, Bolden faced another mandatory minimum of 10 years' imprisonment and up to 60 years' imprisonment. See Neb. Rev. Stat. § 29-2221 (Reissue 2016). There was no abuse of discretion by the district court in its decision denying Bolden's request to withdraw his plea on the ground asserted.

(b) Not Receiving Medication

At Bolden's plea hearing held "via Webex" on January 7, 2022, when Bolden was asked by the district court if he was treated for "any mental illness" or suffered from "any mental or emotional disorder," he responded, "Schizoaffective, schizophrenia, bipolar, PTSD, depression." When asked if he was taking any medication for "any of those now," Bolden replied, "Currently, no." When asked if he was "thinking clearly here today," Bolden replied, "Yes." Bolden was advised that he still had the option of entering a plea of not guilty or not responsible by reason of insanity or that he could say nothing; Bolden acknowledged his understanding.

Bolden now claims that given the "long list of mental or emotional disorders" he identified at the hearing, the district court "should have, at a minimum, conferred with Bolden's counsel to determine whether his counsel could provide an opinion as to Bolden's mental competency to proceed . . . . After all, Bolden was facing life in prison." Brief for appellant at 16. However, as observed by the State, Bolden's counsel had informed the court that "we did have him evaluated by our office, and had that been an issue, we would have filed the appropriate notices and motions with the Court." Further, Bolden primarily talked about having "a lot of allergies to medications" and being taken off some medications because of "side effects." Bolden did not claim then nor does he claim now that there was any medically supported reason that by not being on medication he was unable to understand the plea agreement and the advisements given by the court.

A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense. *State v. Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010). The test of mental capacity to plead is the same as that required to stand trial. *Id.* A court is not required to make a competency determination in every case in which a defendant seeks to plead guilty or to waive his or her right to counsel; a competency determination is necessary only when a court has reason to doubt the defendant's competence. *Id.*

- 8 -

There is nothing in the record before us to suggest that the district court should have had a reason to doubt Bolden's competence to enter a plea. The court did not abuse its discretion in denying Bolden's request to withdraw his plea on this asserted basis.

### 3. Excessive Sentence

Bolden claims that the district court abused its discretion when it imposed an excessive sentence. Bolden was convicted of one count of second degree murder, a Class IB felony, which is punishable by 20 years' to life imprisonment. See § 28-105. The district court sentenced Bolden to 40 to 50 years' imprisonment, which was within the statutory range. As such, we review the court's sentencing determination only for an abuse of discretion.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Bolden was 34 at the time of sentencing. According to the presentence investigation report (PSR), Bolden was divorced and had 6 children, 2 of whom had passed away. He obtained his GED in 2021 and had limited employment history due to his struggles with substance abuse, mental health issues, and repeated periods of incarceration.

Bolden's adult criminal history is extensive, and includes, but is not limited to, convictions for the following: marijuana possession (2006, 2008, 2010, and 2011, fines); "Operating During Suspension – Two or More Offenses" (2008 and 2010, jail and fines); operating during suspension (2015, 18 months' probation revoked, 90 days' jail); "Domestic Violence Assault in the Third Degree," (2010 and 2012, jail; 2013, 18 months' probation revoked, 240 days' jail; 2014, jail); disorderly conduct and resisting arrest (2011, jail); "Possession of a Controlled Substance (IV F)" (2014, 180 days' jail); "Leaving the Scene of a Property Damage Accident – First Offense" (2015, 18 months' probation revoked, 90 days' jail); "Driving Under the Influence – First Offense" (Sarpy County 2016, 30 days' jail); "Driving Under the Influence, .15+ – First Offense" (Douglas County 2016, 10 days' jail); "Driving Under Influence, Second Offense" (2016, 30 days' jail); "Possession of a Controlled Substance – Cocaine (IV F)" (2017, 12 months' probation revoked, 200 days' jail and 9 months' post-release supervision; post-release supervision terminated unsatisfactorily); "Violation of Domestic Abuse Protection Order" (2017, 45 days' jail); "Leaving the Scene of a Property Damage Accident – Second Offense" (2017, 10 days' jail); "Domestic Violence Assault . . . First Offense (F)" (2018, 24 months' probation revoked, 180 days' jail); trespassing (2018, 24 months' probation revoked, 180 days' jail); "Possession of a Controlled Substance (IV F)," (2018, 18 months' prison; discharged on parole, parole revoked; 2019, 52 days' jail and 12 months' post-release supervision (revoked), 120 days' jail); "Criminal Mischief," (2018, 90 days' jail); "Resisting Arrest" (2018, 90 days' jail); "Violation of Domestic Violence Protection Order – Prior Offense" (2019, 120 days' jail); and "Accessory to Robbery (F)" (2020, 2 years' imprisonment). Bolden also has convictions for numerous traffic offenses.

The PSR included a written statement by Bolden, where he stated that, at the time of his offense, he had just been released from prison and "felt confident about being successful this time." He stated that he was sober and working on mending his relationship with his ex-wife and children. However, on the night of the incident, he got into an argument with his ex-wife about staying out on his birthday. To avoid fighting in the presence of his children, he went to a motel. At the motel, he "passed out" from drug use and later woke up and realized that the window to his room had been opened. Out of fear, he began pacing in front of his motel room. He stated that an individual confronted him and "pulled a gun out." When the individual went upstairs along with a group of others, Bolden heard a gunshot and "someone running down the stairs." Bolden stated that he "honestly thought . . . someone was going to kill [him] so [he] fired at the door[,] hoping to slow whoever was coming after [him] down." Bolden stated that he then fled the scene to seek help. Bolden later realized that he had shot and killed his friend.

Bolden stated that he recognized that his "self-medicating" had led to "negative things happening" and that he should have sought help in maintaining his sobriety before returning home after his release from prison. He further stated that he would take the steps necessary to "change . . . the direction of [his] life." Bolden's statement also included an apology to the victim's family.

The probation officer conducted a "Level of Service/Case Management Inventory" as part of the presentence investigation. Bolden was assessed as a "very high" risk to reoffend. He scored in the "medium" risk range in the criminogenic risk factor domains for family/marital and leisure/recreation. He scored in the "high" risk range in the domains for criminal history, education/employment, alcohol/drug problems, and procriminal attitude. He scored in the "very high" risk range in the domains for companions and antisocial patterns.

At the sentencing hearing, Bolden's trial counsel stressed that Bolden had "ongoing mental health issues," which he stated are "apparent from the . . . two different chemical dependency evaluations" submitted to the court. Trial counsel also described the circumstances surrounding Bolden's offense, explaining that there was a "verbal altercation" with three individuals in the hallway and that one individual "pulled a starter pistol on [Bolden]." He noted that police found a starter pistol in the room of one of the individuals staying at the motel. The individuals went upstairs and Bolden believed that "whoever was coming down the stairs was coming at him, and he fired through the closed door." He stated that Bolden "thought he was acting . . . to defend himself." He explained that this was not "legally self-defense" but it helped to "explain [Bolden's] actions on that evening. He wasn't there to hurt anybody. He didn't take the gun to the hotel with the intent of finding somebody to kill. He accidentally . . . killed his friend by shooting through a closed door."

Trial counsel also stated that Bolden had taken responsibility for and was very regretful of his actions. Counsel requested that the district court impose the minimum sentence of 20 years' imprisonment, which would allow Bolden to "serve his sentence and get out on parole."

Bolden personally informed the district court that he recognized he had made "bad choices" and that he was "trying to do everything [he] could" to become "a better person." During his allocution, Bolden apologized to the victim's family who were present at the hearing, stating that the "situation should[] have never happened" and that he was "sorry that it did." He stated that if he "could do anything [to] take back that day," and if he "could trade places with the [victim], [he]

definitely would." He informed the court that the victim was "like family" and that he too was grieving his loss.

Family members, including the victim's twin sister, addressed the district court at sentencing. While family members were generally forgiving of Bolden when describing the loss to their family, the victim's twin sister nevertheless stated that 20 years was "not enough."

The State described Bolden's apology as "sincere" and stated that the shooting "probably . . . happened the way he said it did." However, the State pointed out that Bolden should never "have even had a gun that day" because he was a convicted felon. And he used the gun "while high on methamphetamine." The State indicated that "[t]wenty on the bottom . . . is too low," but elected to not "throw out an actual number" since that was "in the purview" of the court.

In his brief on appeal, Bolden reiterates that he "shot through a closed door and killed one of his friends" by mistake. Even accepting Bolden's version of the events as true, our review of a sentencing order is limited to an abuse of discretion standard. See *State v. Lierman, supra*. Because the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life, a sentencing court is accorded very wide discretion in imposing a sentence. See *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017). It is evident that the district court had before it all the information that Bolden suggests should have resulted in a lesser sentence. However, it was within the sentencing court's discretion to weigh more heavily the factors supporting a lengthier sentence, such as the tragic loss of life and Bolden's unlawful possession of a gun, which he used while under the influence of methamphetamine. We cannot say the district court abused its discretion in determining the sentence imposed.

### 4. INEFFECTIVE ASSISTANCE OF COUNSEL

Bolden alleges five claims of ineffective assistance of trial counsel. Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

Bolden is represented by different counsel on direct appeal than he was at trial. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *Id.* Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). A record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient, and that this deficient performance actually prejudiced the defendant's defense. See *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that

of a lawyer with ordinary training and skill in criminal law. *State v. Blaha, supra*. In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id*. When a conviction is based upon a guilty or no contest plea, the prejudice requirement of an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id*. The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *Id.*

With these governing principles in mind, we turn now to address Bolden's five ineffective assistance of trial counsel claims. We find the record is sufficient to address all of them.

(a) Failure to Speak to Witnesses

Bolden claims that he received ineffective assistance of trial counsel when trial counsel failed to speak with three witnesses -- Shane Krantz, Robert Hurt, and Nicole Williams -- who "would have supported Bolden's claim that Aaron Sinnott pulled a gun on [Bolden] just moments prior to hearing a gunshot that prompted Bolden to shoot." Brief of appellant at 21. Specifically, Bolden states that Krantz would have testified that he is Sinnott's brother and he knew that Sinnott had a gun at the time. Hurt was at the hotel at the time "and with Sinnott." *Id*. at 22. Hurt would have testified that he saw Sinnott "pull out the firearm." *Id*. Williams would have testified that "she knew Sinnott to carry a firearm." *Id*. Bolden argues that this evidence would have supported his explanation as to why he fired the gun -- that "he believed it was necessary to prevent Sinnott from striking him with the next round." *Id*. "By shooting through the door where the gunshot was heard coming from on the other side, he felt he could slow down the shooter long enough to escape down the hall." *Id*. Bolden claims that "[t]his evidence could have supported a defense against second degree murder given the sudden quarrel nature of the encounter." *Id*. He suggests that had trial counsel "confirmed the observations," he "would have received a better plea offer or received a lower sentence." *Id.* at 21.

We fail to see how trial counsel's confirming of these "observations" was somehow deficient and that had counsel talked to these alleged witnesses, Bolden would have received a better plea offer or lower sentence. Bolden's assertions as to what information could have been obtained from these individuals was vague, but even generously construed, such information would have merely supported Bolden's version of events, of which trial counsel and the State were already aware. As the State points out, the police reports and video surveillance reflect that Bolden was walking and talking with other individuals prior to the shooting, with no apparent hostility between them. The other individuals went to the second story of the building while Bolden remained downstairs. The victim is observed walking by himself with what appears to be a sandwich. Bolden, who was standing near a door of the staircase, took out a gun and shot through the door, hitting the victim. The video depicts Bolden as the shooter and Bolden does not dispute it was him. In fact, at the plea hearing, after the State set forth the factual basis, trial counsel acknowledged that the surveillance video "showed my client firing." However, trial counsel explained that "a gun [had been] brandished by someone else, then [Bolden] heard shots fired from the other side," and Bolden "was under the influence of meth at the time"; trial counsel offered this information "for mitigation" purposes.

Additionally, the PSR contains Bolden's version of the incident, including his statement that he thought someone was going to kill him, so he fired at the door, "'hoping to slow whoever was coming after [him] down.'" At the sentencing hearing, trial counsel further described the circumstances surrounding the incident, stating that Bolden had a verbal altercation with three individuals in the hallway and that one of them pulled a "starter pistol" on Bolden. The police reports indicate that an airsoft gun was located at the motel. Bolden believed that whoever was coming down the stairs was coming at him, so he fired through the closed door. Trial counsel stated that Bolden "accidentally . . . killed his friend by shooting through a closed door." Bolden personally apologized to the victim's family and said that the situation should have never happened and that he was "sorry that it did." The State described Bolden's apology as sincere and that the shooting "probably . . . happened the way he said it did."

The circumstances underlying Bolden's offense were acknowledged by trial counsel and the State from the time of the plea hearing through sentencing. Bolden's trial counsel was not deficient in failing to speak to Krantz, Hurt, and Williams since the information Bolden claims they possessed was, at best, merely duplicative of that which was already known by the prosecution and the defense and presented to the district court throughout the proceedings.

Also, as the State points out, Bolden's suggestion that this information could have supported a sudden quarrel defense against second degree murder is not supported by the law. A sudden quarrel is a legally recognized and sufficient provocation which causes a reasonable person to lose normal self-control. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020). The question is whether there existed reasonable and adequate provocation to excite one's passion and obscure and disturb one's power of reasoning to the extent that one acted rashly and from passion, without due deliberation and reflection, rather than from judgment. *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012). The test is an objective one. *Id*. Qualities peculiar to the defendant which render him or her particularly excitable, such as intoxication, are not considered. *Id*. Given the evidence available in this case, there is no reasonable probability that Bolden would have insisted on going to trial if his trial counsel had spoken with these three individuals since none of the information he claimed they possessed would have supported the existence of a sudden quarrel, particularly in light of the surveillance video evidence.

Finding no deficient performance, this claim of ineffective assistance of trial counsel fails.

### (b) Failure to Obtain Medical Records

Bolden claims that he received ineffective assistance of counsel when trial counsel failed to obtain certain medical records from "mental health facilities that had diagnosed and treated him over the years." Brief for appellant at 22. He argues that "[t]hose documents could have been used to support his request to withdraw his plea and mitigate his sentence." *Id.* Bolden argues that, had "his counsel supported his arguments with the documents, he would have had his plea withdrawn or received a lesser sentence." Bolden does not elaborate as to the information that would have been in the documents other than his various mental health diagnoses.

We previously discussed the district court's awareness of Bolden's diagnoses, which was addressed at the plea and sentencing hearings, as well as in a substance use and mental health evaluation contained in the PSR. We fail to see how obtaining the alleged medical records represents deficient performance by trial counsel, but even it was, we fail to see how such records

would have caused Bolden to insist on going to trial rather than entering a plea. Bolden confirmed to the district court during the plea hearing that he was "thinking clearly" at the time he entered his plea. We also fail to see how obtaining the documents would have helped "mitigate his sentence" since the court was aware of his various mental health diagnoses through trial counsel's and Bolden's statements to the court and Bolden's own written statement in the PSR. This claim of ineffective assistance of counsel fails.

### (c) Failure to Offer Evidence at Plea Withdrawal Hearing

Bolden claims that he received ineffective assistance of counsel when trial counsel "offered no evidence" at the hearing on his motion to withdraw his plea, and as a result, his motion was denied. Brief for appellant at 24. In support of his alleged claim, he refers to the written allegations in his request to withdraw his plea which we set forth earlier, however, he supplies no argument as to what evidence could have been produced other than once again referring to "medical records." We have already determined that, even assuming trial counsel was somehow deficient in obtaining and presenting such records at the hearing on Bolden's motion to withdraw, Bolden cannot show that this alleged deficiency prejudiced him.

Bolden further claims that trial counsel's performance at the hearing was deficient because he informed the district court that "it was not in his client's best interest to withdraw the plea." However, this claimed deficiency also could not have prejudiced Bolden, given that the court expressly stated that it would review the transcript of the plea hearing before making its decision. There is no indication in the court's April 1, 2022, order that it placed any reliance on trial counsel's statement. This claim of ineffective assistance of trial counsel also fails.

### (d) Failure to Present Mitigating Information at Sentencing

Bolden contends that he received ineffective assistance when trial counsel failed to provide the district court with Bolden's mental health records at the sentencing hearing. He also argues that trial counsel should have presented information at the sentencing hearing "confirm[ing] his story" that another individual "brandish[ed] a gun at Bolden" and Bolden heard "a gunshot once the party had entered the closed stairwell." Brief for appellant at 25-26.

We have already addressed that Bolden cannot show that he was prejudiced by trial counsel's alleged failure to obtain and present additional information corroborating Bolden's claims of mental illness and his account of what took place the night of the shooting because that information was already before the district court. Bolden does not claim that there was a reasonable probability that but for these alleged errors of trial counsel he would have insisted on going to trial rather than entering a plea; rather, he suggests the court's ability to consider these factors "was limited by the extent to which Bolden's defense counsel made efforts to produce the information." Brief for appellant at 26.

As previously addressed, information regarding Bolden's mental health and Bolden's version of the circumstances leading up to Bolden shooting the victim was presented to the district court throughout the proceedings both verbally and in the PSR. This claim of ineffective assistance of counsel also fails.

(e) Misrepresentation Before Entering Plea

Bolden claims that he received ineffective assistance of counsel "when his counsel led him to believe he would receive a minimal sentence." Brief for appellant at 27. He claims that trial counsel "relay[ed] to [Bolden's] family" that he would receive a sentence of "5 years after good time would be applied to a 10-year sentence." *Id.* He claims that "had the representation not been made, . . . he would have rejected the plea offer." *Id.*

We addressed this issue earlier in the context of Bolden's argument that this alleged misrepresentation should have been grounds to allow him to withdraw his plea. We reject the argument here for the same reasons discussed earlier. Additionally, as noted by the State, Bolden responded affirmatively when the district court specifically asked him during the plea hearing if he understood that the offense of second degree murder was punishable by up to life in prison. "This plea colloquy alone refutes Bolden's assertion that he was 'promised' a sentence of 10 years in prison." Brief for appellee at 28. We agree. But even if Bolden's trial counsel was deficient in somehow misstating or promising a sentence of 10 years' imprisonment, Bolden cannot establish prejudice because the court informed him otherwise and he still elected to enter his plea. Notably, Bolden confirmed his understanding directly to the court that he could receive up to a life sentence. As such, Bolden has failed to show a reasonable probability that but for the alleged error of trial counsel, he would have insisted on going to trial rather than pleading no contest.

## VI. CONCLUSION

We affirm Bolden's conviction and sentence, and we conclude that all of Bolden's claims of ineffective assistance of trial counsel fail.

AFFIRMED.